IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHERRY A. PRUITT,                    :

    Plaintiff,                       :

v.                                   :
                        Civil Action No. GLR-14-344
PENINSULA REGIONAL MEDICAL           :
CENTER,
                                      :

    Defendant.                       :

                                      :

## MEMORANDUM OPINION

THIS MATTER arises out of Defendant Peninsula Regional Medical Center's ("PRMC") alleged unlawful discharge of Plaintiff Sherry A. Pruitt on January 12, 2012. Pending before the Court is PRMC's Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 9). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons outlined below, PRMC's Motion will be granted.

## I.    BACKGROUND[1]

PRMC is a tertiary care facility located in Salisbury, Maryland. From October 1999 until January 2012, PRMC employed Pruitt in various capacities. At the time of her discharge, Pruitt was a Heart Center Inventory Control Coordinator in the

---

[1] Unless otherwise noted, the following facts are taken from the record and viewed in a light most favorable to the nonmoving party, Pruitt.

Materials Management Department. Pruitt's position required lifting up to fifty pounds and considerable standing, walking, and repetitive motion. Laura McIntyre was Pruitt's direct supervisor and Scott Phillips was the Director of Materials Management.

In 2005, Pruitt had a transvaginal mesh implanted to repair a medical problem with her bladder. Over time, the surgical mesh loosened thereby causing Pruitt to incur frequent medical complications and pain, which, beginning in 2006, resulted in her having difficulty lifting and performing her work. Pruitt alleges that she informed McIntyre and Phillips of these challenges and requested assistance but only received help sporadically. McIntyre and Phillips deny having any knowledge of any of the complications Pruitt endured after the transvaginal mesh surgery.

In December 2011, Pruitt secured a physician to perform a series of corrective surgeries. On December 16, 2011, Pruitt emailed McIntyre to inform her that she had to undergo three procedures over the course of six months. Pruitt also informed McIntyre that she would use her vacation time to cover the procedures. Thereafter, McIntyre directed Pruitt to complete a FMLA form despite her intent to use vacation leave. Pruitt submitted the form to McIntyre that day. On December 22, 2011, McIntyre returned the FMLA form to Pruitt and stated that it

would not be signed until Pruitt submitted the required medical certification.   During that conversation, McIntyre allegedly told Pruitt that, since 2008, she had used three previous periods of FMLA leave.

On January 11, 2012, a vendor entered Pruitt's lab without the required vendor badge.   According to Pruitt, before she could inform the vendor of the need for a badge, the vendor headed downstairs to sign the requisite documents.   At some point, Phillips sought out the vendor and counseled him on the importance of the badge policy and the policy's connection to patient protection.   According to Phillips, Pruitt walked past the men during their discussion and remarked "yeah right, protecting patients."   Pruitt denies making this comment.   After the encounter, Phillips sent Pruitt an email directing her to send vendors without badges to the proper area.

On January 12, 2012, Phillips and Pruitt had an encounter regarding the previous day's badge incident.   The parties' versions of events differ regarding the nature of this encounter.   According to Phillips, when he mentioned the badge issue to Pruitt she walked past him and ignored him.   When Phillips followed Pruitt in an attempt to speak with her, she replied that she did not have time to verify whether vendors had badges and continued to walk away.   According to Pruitt, when she passed Phillips on the way to the cafeteria she greeted him

and continued walking.  Pruitt declares that, due to a hearing disability, she never heard Phillips call her name until he accosted her in front of the cafeteria.  Phillips then allegedly accused Pruitt of jeopardizing patient safety and placing the security of the hospital at risk.  Pruitt declares that Phillips raised his voice and pointed his finger in a way that made her feel bullied and intimidated.  When she could not hold back her tears any longer, Pruitt excused herself and continued to walk past Phillips despite his attempts to follow her.  Pruitt claims the incident spurred an anxiety attack.

That day, Phillips discharged Pruitt for "insubordinate conduct," citing the morning encounter as the catalyst for her termination and listing two previous instances of misconduct as examples of management having issues with Pruitt in the past.  On August 14, 2012, Pruitt filed an administrative charge against PRMC with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discriminatory discharge on the bases of sex, age, and disability.  The EEOC issued Pruitt a right-to-sue notice on August 29, 2013.  On November 19, 2013, Pruitt filed this suit in the Circuit Court for Wicomico County, Maryland.  (ECF No. 2).  PRMC timely removed the suit to this Court on February 4, 2014.  (ECF No. 1).  PRMC filed the pending Motion on February 11, 2014.  (ECF No. 9).

## II.  DISCUSSION

### A.    Standards of Review

PRMC moves to dismiss Pruitt's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. The Court will address Pruitt's disability claims under Rule 12(b)(1) and her FMLA claim under Rule 56.

A motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1). The failure to exhaust administrative remedies is properly challenged via this rule. See Khoury v. Meserve, 268 F.Supp.2d 600 (D.Md. 2003). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted); see also Evans, 166 F.3d at 647. The court should grant a 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, 945 F.2d at 768.

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint.

_Edwards v. City of Goldsboro_, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See _Harrison v. Westinghouse Savannah River Co._, 176 F.3d 776, 783 (4th Cir. 1999) (citing _Mylan Labs., Inc. v. Matkari_, 7 F.3d 1130, 1134 (4th Cir. 1993)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action[, however,] will not do." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (citing _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." _Id._ (quoting _Twombly_, 550 U.S. at 557) (internal quotation marks omitted). A motion to dismiss is properly converted into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(d).

Under Rule 56, the court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, the court views the facts in a light most favorable to the nonmoving party. _Anderson v._

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  Moreover, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed.R.Civ.P. 56(d).

**B.   Analysis**

**1.   FMLA Claim (Count I)**

PRMC avers that Pruitt's FMLA claim fails for three reasons: (1) she failed to allege the hours necessary to show that she is an eligible employee under the FMLA; (2) PRMC had no notice of Pruitt's leave request; and (3) Pruitt was discharged for a legitimate reason.  A review of the documents reveals that Pruitt's failure to adequately allege her FMLA eligibility is easily curable by amendment and there is a genuine issue of material fact regarding PRMC's notice of Pruitt's leave request. Even after assuming, that these two issues may be resolved in favor of Pruitt, however, her FMLA claim fails because Pruitt has not shown that PRMC's insubordination explanation is pretextual.

The FMLA "entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons . . . and ensures that these employees will be restored to their same or an equivalent position upon returning to work."  Rhoads v. F.D.I.C., 257 F.3d 373, 381-82 (4th Cir. 2001) (citing 29 U.S.C. §§ 2612(a)(1), 2614(a)(1)). Under the FMLA, interference claims apply to any employer who "interfere[s] with, restrain[s], or den[ies] the exercise of or the attempt to exercise, any right" protected by the FMLA.  29 U.S.C. § 2615(a)(1).  Moreover, retaliation claims apply to any employer who "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful" by the FMLA.  Id. § 2615(a)(2).

Pruitt styles her allegations against PRMC as an interference claim.  The Court notes, however, that the pretext language the parties cite in their briefs is associated with retaliation claims.  This distinction is not particularly pertinent in this case because the dispositive inquiry, regardless of the claim, is whether PRMC discharged Pruitt for a legitimate reason.  See Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 547 (4th Cir. 2006) ("We join our sister circuits in concluding that the FMLA does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave."); Nichols v. Ashland Hosp.

Corp., 251 F.3d 496, 502 (4th Cir. 2001) (applying the burden-shifting framework of McDonnell Douglas Corp. v. Green and noting, "If an FMLA plaintiff puts forth sufficient evidence to establish a prima facie case of retaliation and the employer offers a non-discriminatory explanation for the plaintiff's termination, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation").   The Court concludes that PRMC successfully provides a legitimate, non-discriminatory reason for Pruitt's discharge.

PRMC avers that it discharged Pruitt solely for insubordination.   The event triggering the discharge was Pruitt's encounter with Phillips on January 12, 2012, in which Phillips approached Pruitt to address the previous day's badge incident.   Pruitt's discharge notice states that her behavior constitutes "insubordinate conduct," and references two prior incidents of Pruitt's misconduct.   (See Def.'s Mot. to Dismiss, or in the Alt., for Summ. J. ["Def.'s Mot."] Ex. 32, ECF No. 9-34).   Although Pruitt disagrees with PRMC's interpretation of her encounter with Phillips on January 12, 2012, and challenges the allegations regarding her previous misconduct, both parties agree that Phillips approached Pruitt that day with the intent of discussing the January 11 badge incident and Pruitt walked away.   (Compare Pruitt Aff. ¶¶ 34-39, ECF No. 14-1, with

Phillips Aff. ¶¶ 6-7, ECF No. 9-8; Phillips Aff. ¶ 5, ECF No. 19-2). Therefore, Pruitt's interpretation of Phillips's approach is not determinative here. See, e.g., DeJarnette v. Corning Inc., 133 F.3d 293, 298-99 (4th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reasons for the plaintiff's termination." (quoting Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997))). Pruitt proffers no evidence, or request for discovery, that questions whether Phillips honestly believed Pruitt was being insubordinate on the date of her discharge.

Moreover, Pruitt's discharge is similar to other PRMC employees who were discharged for insubordinate behavior. (See Def.'s Mot. Ex. 35, ECF No. 9-37). Specifically, PRMC discharged each of the identified comparators for refusing to follow management's directives, even after being given multiple opportunities to comply in some cases. (Id.). This contributes to PRMC's contention that Pruitt was discharged for the same behavior – insubordination – and not for her intention to use her FMLA benefits.

PRMC's approval of Pruitt's prior FMLA requests further strengthens its argument that Pruitt was discharged for a

legitimate reason.  See, e.g., Yashenko v. Harrah's N.C. Casino Co., 352 F.Supp.2d 653, 662 (W.D.N.C. 2005) ("The fact that the Defendant had historically and regularly granted Plaintiff medical leave followed by the full restoration of his employment is evidence that Defendant acted without discriminatory intent . . . ." (citing Dodgens v. Kent Mfg. Co., 955 F.Supp. 560, 566 (D.S.C. 1997))), aff'd, 446 F.3d 541 (4th Cir. 2006).  Prior to her December 2011 FMLA request, PRMC approved Pruitt's four FMLA requests in 2006, 2010, and 2011. (See Def.'s Mot. Exs. 10, 12, 16, 18-20, 22, 24, 26-28).  PRMC reinstated Pruitt to her previous position after each period of leave.

Rather than offer evidence to rebut PRMC's proffered reason for her discharge, Pruitt argues, under Rule 56(d), that additional discovery is required to demonstrate that PRMC's proffered reason for her discharge is pretextual.  In her discovery request Pruitt avers that she needs additional documents to establish her that discharge was a disproportionate disciplinary action given her twelve-year employment record, and that minor out of date disciplinary infractions were also used as pretext to support the discharge.  Pruitt further requests discovery to determine whether the former employees PRMC provided are valid comparators and to obtain information regarding Mark Parsons, another employee Pruitt claims engaged in a more serious infraction and received a minor reprimand.

11

The evidence Pruitt seeks, however, will not create a genuine issue of material fact sufficient to challenge the legitimacy of her discharge.  See Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995) (stating a Rule 56(d) request is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment").

As a preliminary matter, none of the evidence Pruitt seeks remotely suggests that her desire to take FMLA leave was a motivating factor in her discharge.  Moreover, the documents presented by PRMC include enough information to determine whether the discharged individuals are valid comparators.  Their job titles, reason for discharge, and, where applicable, prior disciplinary actions are listed in the documents provided. Furthermore, even if the Court were to reject PRMC's explanation of the situation with Mark Parsons, Pruitt's Rule 56(d) request fails because Pruitt cannot rely on Mr. Parsons as a single comparator while rejecting the evidence of the other comparators PRMC provided.  See, e.g., Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 642 (3d Cir. 1998) (holding, in an ADEA case, "that a plaintiff does not create an issue of fact merely by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant

group of comparators who were treated equally to her"). Therefore, Pruitt's Rule 56(d) Motion will be denied.

Accordingly, PRMC's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion for Summary Judgment on Count I, will be granted.

### 2.    Disability Discrimination Claims (Counts II-IV)

PRMC also moves to dismiss Pruitt's disability claims on three bases: (1) she failed to exhaust administrative remedies prior to filing suit; (2) it had no knowledge of Pruitt's disabilities; (3) and it discharged Pruitt for legitimate reasons.  The Court will dismiss Pruitt's disability claims for her failure to exhaust administrative remedies.

A plaintiff alleging disability discrimination under Maryland's anti-discrimination law must file an "administrative charge or complaint under federal, State, or local law alleging an unlawful employment practice" prior to filing suit.  Md. Code Ann., State Gov't § 20-1013(a)(1) (West 2014).  PRMC avers that Pruitt failed to exhaust administrative remedies on her disability claims because the allegations in the Complaint exceed the scope of her EEOC charge.  Pruitt, primarily relying upon Federal Express Corporation v. Holowecki, 552 U.S. 389 (2008), counters that her intake questionnaire constitutes a charge and cures the deficiency in her formal EEOC charge.  The Court notes, however, that Holowecki addresses whether an intake

13

questionnaire, accompanied by an affidavit requesting the agency to take action, constitutes a "charge" for statute of limitations purposes.  Holowecki does not concern the question of whether an intake questionnaire expands the scope of a formal administrative charge.

In Balas v. Huntington Ingalls Industries, Inc., the Court of Appeals for the Fourth Circuit clearly held that allegations contained in intake questionnaires, yet left out of formal administrative charges, cannot be considered by the court because to do so would contravene the notice requirements inherent in the act.  711 F.3d 401, 406-09 (4th Cir. 2013) ("The intake questionnaire and the letters Balas submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII. . . . Any Title VII claims based on allegations included only in Balas's intake questionnaire and letters are therefore outside the jurisdiction of the federal courts."); see also Ahuja v. Detica Inc., 873 F.Supp.2d 221, 230 (D.D.C. 2012) ("[P]ermitting Title VII plaintiffs to routinely reach back to the contents of intake questionnaires to expand the scope of a subsequent lawsuit would, if not eviscerate, then at the very least significantly undermine the policies underlying the exhaustion requirement Congress decided to impose upon Title VII plaintiffs").

14

Here, Pruitt's EEOC charge states she was discharged on the basis of her disability, among other things, and lists her actual discharge date of January 12, 2012, as the discrimination date. (See Def.'s Mot. Ex. 36, ECF No. 9-38). Conversely, Pruitt's intake questionnaire lists many of the incidents and disabilities she now includes in her Complaint, including hints of her disputed failure to accommodate claims. (See Pl.'s Resp. to Def.'s Mot. Ex. 2, ECF No. 14-2). The issue, however, is that Pruitt's failure to include these allegations in her EEOC charge did not place PRMC on notice of Pruitt's failure to accommodate claims. In fact, a review of PRMC's response to Pruitt's EEOC charge shows that PRMC was under the impression that Pruitt's allegations only concerned discriminatory discharge. (See Def.'s Mot. Ex. 37, ECF No. 9-39). Because Pruitt's disability claims exceed the scope of her EEOC charge, and PRMC was, therefore, not placed on notice of these allegations, they will be dismissed without prejudice.

Accordingly, PRMC's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a Motion to Dismiss Counts II-IV, will be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT PRMC's Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 9). Judgment will be entered in

15

favor of PRMC against Pruitt on Count I.   Counts II through IV will be dismissed without prejudice for failure to exhaust administrative remedies.

Entered this 25th day of June, 2014.

_____/s/_____
George L. Russell, III
United States District Judge
